**Opinion issued January 14, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00183-CR

———————————

**ROY VASQUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1437421**

---

## O P I N I O N

A jury found Roy Vasquez guilty of sexual assault and assessed his punishment at 17 years' confinement and a $10,000 fine. TEX. PENAL CODE ANN. § 22.011 (West 2011). On appeal, he contends that the trial court erred in prohibiting him from discussing the legal registration requirements for convicted

sex offenders in his closing argument in the punishment phase.  Finding no reversible error, we affirm.[1]

## Background

According to the complainant, early on a December morning in her home in Houston, she awoke to find a stranger entering her bedroom.  The stranger, later identified as Vasquez, asked her for money.  He took the complainant's cell phone from her nightstand.  According to the complainant, he then grabbed her by the hair, put a knife to her neck, and asked her to take her clothes off.  Vasquez ripped the complainant's shirt off, pulled her pants down, and sexually assaulted her.  The complainant then covered herself with a blanket while Vasquez rifled through her drawers looking for more valuables.  While Vasquez searched, the house phone rang.  The complainant answered, finding her boyfriend on the line.  The complainant told her boyfriend that she couldn't talk at the moment and that she'd call him back.  Shortly thereafter, the complainant's boyfriend called again, asking if something was wrong.  Vasquez ordered the complainant not to cry and to speak normally.  The complainant reiterated that she couldn't talk, and hung up again.

---

[1] We publish this opinion because there is a lack of published authority on the harm analysis issue presented here.  *See*, *e.g.*, *Requeno-Portillo v. State*, No. 01-10-00242-CR, 2011 WL 3820747, at *5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, pet. ref'd) (mem. op., not designated for publication); *Rivas v. State*, 02-08-00410-CR, 2011 WL 856930, at *3–4 (Tex. App.—Fort Worth Mar. 9, 2011, pet. ref'd) (mem. op., not designated for publication).

Before leaving, Vasquez asked the complainant to take a shower, which she refused to do.

When she was sure that Vasquez was gone, the complainant ran out of the house towards a nearby school, flagging down a passing car. The driver of the car let the complainant use her phone to call 911. The complainant returned to her house with the driver to await the police and EMS. When they arrived, the police found that a kitchen window had been smashed from the outside and that the back door had been forced open. EMS took the complainant to the hospital, where she was evaluated. The examiner found superficial cuts to the complainant's genitals and abrasions consistent with her allegations that Vasquez had held a knife to her neck. Shortly thereafter, the complainant visited the Houston Police Department, where a forensic artist interviewed her and sketched her attacker.

Without a suspect, however, the trail went cold until Vasquez's DNA profile appeared in the national DNA database and was found to match the assailant's. When Vasquez was subsequently arrested for an unrelated crime, he consented to giving another DNA sample, which confirmed that his DNA was found on the complainant after the assault. The complainant also identified Vasquez as the assailant in a photo lineup.

Vasquez gave a different account of the incident. Along with his sister, Vasquez's friend testified that Vasquez knew the complainant before the incident

3

and that Vasquez and the complainant were dating. In his own trial testimony, Vasquez confirmed that he had been dating the complainant. Per Vasquez's account, the complainant called him early on the morning of the incident. He went to the complainant's house, where they had consensual sex. Shortly after they finished, Vasquez and the complainant heard someone knocking at the door, whom the complainant said was her boyfriend. Vasquez fled the complainant's house.

In rebuttal, the State called the complainant's then-boyfriend. He denied that he was at the complainant's house at the time of the incident.

The jury returned a guilty verdict as to sexual assault but acquitted the defendant of aggravated sexual assault. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) ("With respect to testimony of witnesses, the jury is the sole judge of the credibility and weight to be attached thereto, and when the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination."). In the punishment phase, Vasquez stipulated to his criminal history, which included one felony conviction for auto theft and several misdemeanor convictions, including two for assault on a family member and two for trespass of a habitation. He called his mother and a friend to testify as character witnesses. Vasquez did not present evidence concerning the implications of having to register as a sex offender.

During closing argument of the punishment phase, Vasquez's counsel began to describe the registration requirements that Vasquez would be subject to as a convicted sex offender. The State objected, arguing that Vasquez was introducing facts not in evidence. The disputed portion of Vasquez's closing argument is as follows:

> DEFENSE: What does it mean to get convicted on a sexual assault case? What does it mean to Roy even before you assess punishment in this case? It means a lifetime of registration as a sexual offender, basically until the day he dies. Every time he moves houses, he will be required to register – pre-register seven days before.
>
> STATE: Objection, Your Honor. This is all facts not in evidence.
>
> THE COURT: Sustained. Please stay within the evidence.
>
> DEFENSE: Sexual registration will also require –
>
> STATE: Objection, Your Honor, this is facts not in evidence.
>
> THE COURT: Sustained.
>
> DEFENSE: Employers do not hire sex offenders.
>
> STATE: Objection, Your Honor, facts not in evidence.
>
> DEFENSE: Your Honor –

THE COURT:  Overruled.  I'll allow it.

DEFENSE:  Thank you, sir.

DEFENSE:  He will not be employable.  He will have to find another way of making a living once he gets out of jail.

The prosecutors will argue that Natalie's life will never be the same.  I submit to you, ladies and gentlemen, neither will Roy's.  He will be labeled like a sex offender and be treated as one as long as he lives.  Sex offenses are considered extremely serious offenses by the parole board.  In my experience, he will pretty much have to serve out –

STATE:  Objection, Your Honor –

DEFENSE:  – the sentence you give him.

STATE:  – improper argument.

THE COURT:  Sustained.

[Defense counsel], please stay within what the evidence showed during the guilt/innocence and punishment phase of the trial and any reasonable inferences from those.

DEFENSE: It's closing argument, Your Honor.

THE COURT:  Yes, ma'am, it is closing argument.  But you can't tell people things that are your personal opinion or what is in your experience that has not been shown by the evidence presented in this courtroom or that are

6

reasonable inferences from those. Those are the rules. I didn't make them, but I'm going to enforce them.

The State did not request an instruction to disregard the excluded remarks. Vasquez's counsel concluded her closing argument by asking the jury to consider that Vasquez would have to register as a sex offender. The State did not object to this remark. After closing arguments, Vasquez's counsel made an offer of proof regarding her intended closing argument:

> DEFENSE: Being a sex offender essentially means lifetime registration, basically until the day he dies. Every time he moves residences, he would be required to register. Before he moves – seven days before he moves and seven days after the move. If he were to go somewhere for two days in three months, he has to report to the authorities of that city and county as well. And failure to comply with the registration requirements is another felony. And depending on the circumstances of that particular case, the range of punishment can be anywhere between 180 days to 20 years in prison for each violation.
>
> Once he registers, the police will automatically be provided with his sex offender status upon request when they run a check on his driver's license or his license plate.
>
> Additionally, the Texas Attorney General's Office authorizes local governments to broadcast information about registration of sex offenders to local cable television because it's public information. His name will also be on the Internet as a registered sex offender.

**Discussion**

Vasquez contends that the trial court's limitation of his counsel's closing argument during the punishment phase effectively denied him counsel. The State concedes that Vasquez's comments correctly stated the law, but argues that they exceeded the scope of appropriate jury argument.

We review the trial court's ruling on the State's objection to a defendant's jury argument for abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). The trial court has broad discretion in controlling the scope of closing argument, but it may not prevent defense counsel from making a point essential to the defense. *Wilson v. State*, No. 01-13-00917-CR, 2015 WL 5042107, at *10 (Tex. App.—Houston [1st Dist.] Aug. 25, 2015, pet. filed). A defendant has the right to argue any theory supported by the evidence, and may make all inferences from the evidence that are legal, fair, and legitimate. *Id.*; *Melendez v. State*, 4 S.W.3d 437, 442 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Counsel is entitled to correctly argue the law, even if the law is not included in the jury charge. *State v. Renteria*, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998). Prohibiting defense counsel from making a particular jury argument when counsel is entitled to do so is a denial of the defendant's right to counsel. *Wilson*, 2015 WL 5042107, at *10. However, neither the State nor the defense may use closing

argument as a vehicle to place before the jury evidence that is outside the record. *See Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).

The State concedes, and our review confirms, that Vasquez's offer of proof was "legally accurate." Vasquez was convicted of sexual assault. *See* TEX. PENAL CODE ANN. § 22.011. As such, he is subject to registration as a sex offender. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(6)(A) (West 2006 & Supp. 2015). Vasquez must reregister and notify law enforcement whenever he moves. *Id.* arts. 62.051(a), -055(a). He may be sentenced to up to 20 years in prison for failure to comply with the registration requirements. *Id.* art. 62.102(b); TEX. PENAL CODE ANN. § 12.33 (West 2011). His status as a sex offender is public record, and may be publicized through various channels. TEX. CODE CRIM. PROC. ANN. art. 62.005. As a correct and relevant statement of the law, Vasquez's argument should have been permitted.

The State contends, however, that the trial judge properly excluded Vasquez's argument because it would have introduced facts not present in the record. It observes correctly that no evidence concerning sex offender registration requirements was presented at trial. Vasquez's offer of proof, however, is a recitation of the consequences mandated by statute for his conviction. It contains no new facts, nor does it rely on any facts not present in the record. To the extent that Vasquez's remarks in closing argument discussed and applied the law

9

applicable to convicted sex offenders, as his offer of proof did, the trial court should have allowed them. *Renteria*, 977 S.W.2d at 608; *Wilson*, 2015 WL 5042107, at *10.

The trial court properly excluded, however, counsel's comments that sex offenders are less likely to be released on parole than other offenders because it was argument outside the record. *Borjan*, 787 S.W.2d at 57; *Wilson*, 2015 WL 5042107, at *10. Trial courts possess broad discretion to control the scope of closing argument. *Wilson*, 2015 WL 5042107, at *10. This includes the authority to exclude argument based on theories not supported by the evidence. *Cf. id.*; *Melendez*, 4 S.W.3d at 442 (noting that the defense has the right to argue any theory supported by the evidence or reasonable inferences from it). Thus, parties may argue law not present in the jury charge to the extent that it is implicated by the facts in evidence, and no further.

*Harm Analysis*

Because a trial court's improper denial of a jury argument counsel is permitted to make is a denial of the right to counsel, it is constitutional error, subject to harm analysis under Rule of Appellate Procedure 44.2(a). TEX. R. APP. P. 44.2(a); *Wilson*, 2015 WL 5042107, at *10; *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.). Under Rule 44.2(a), an appellate court "must reverse a judgment of conviction or punishment unless the court determines

beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *Wilson*, 2015 WL 5042107, at *10. In applying the harmless error test, the primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction or punishment. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Wilson*, 2015 WL 5042107, at *10; *see Johnson v. State*, 660 S.W.2d 536, 538 (Tex. Crim. App. 1983) (noting that under predecessor to current constitutional harmless error analysis, primary question was whether there is a reasonable possibility that the error might have "contributed to the conviction or affected the punishment assessed").

In conducting our harmless error analysis, we do not focus on the propriety of the outcome of the trial, but instead "calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We must evaluate the record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. *Cantu v. State*, 395 S.W.3d 202, 211 (Tex. Crim. App. 2012). We consider the nature of the error, the extent to which it was emphasized by the State, its collateral implications, and the weight a jury would likely assign it. *Cantu*, 395 S.W.3d at 211; *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). These factors are not exclusive, and other considerations

11

may inform our harm analysis. *Cantu*, 395 S.W.3d at 211. "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden*, 353 S.W.3d at 822 (alteration in original) (quoting TEX. R. APP. P. 44.2(a)).

Because Vasquez's counsel conveyed to the jury the substantive argument that Vasquez would be subject to sex offender registration requirements, we conclude beyond a reasonable doubt that he was not harmed by the trial court's rulings. Vasquez's counsel impressed on the jury that Vasquez would have to register; that this was a punishment of serious gravity; and that sex offender registration would make it difficult for Vasquez to find employment. Vasquez's counsel ended his closing argument by entreating the jury to consider the registration requirements, and the State raised no objection. In evaluating whether a defendant was harmed by the trial court's exclusion of the defendant's argument, an appellate court may consider the extent to which the defendant communicated his argument despite the trial court's rulings. *E.g.*, *Wilson*, 2015 WL 5042107, at *10–11; *Requeno-Portillo v. State*, No. 01-10-00242-CR, 2011 WL 3820747, at *5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, pet. ref'd) (mem. op., not designated for publication); *Rivas v. State*, 02-08-00410-CR, 2011 WL 856930, at

*3–4 (Tex. App.—Fort Worth Mar. 9, 2011, pet. ref'd) (mem. op., not designated for publication). Vasquez conveyed the gravamen of his argument to the jury. Thus, we hold that the trial court's error in limiting discussion of the legal consequences of sex offender registration was harmless. *See Wilson*, 2015 WL 5042107, at *10–11; *Requeno-Portillo*, 2011 WL 3820747, at *5; *Rivas*, 2011 WL 856930, at *3–4.

## Conclusion

Finding no reversible error, we affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Publish. TEX. R. APP. P. 47.2(b).